Filed 7/13/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | S227228 |
| v. | ) | |
| | ) | Ct.App. 2/1 B259967 |
| THE SUPERIOR COURT OF | ) | |
| LOS ANGELES COUNTY | ) | |
| | ) | Los Angeles County |
| Respondent; | ) | Super. Ct. No. BC503806 |
| | ) | |
| MARSHALLS OF CA, LLC, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| _____ | ) | |

This is a representative action seeking civil penalties on behalf of the State of California and aggrieved employees statewide for alleged wage and hour violations. (See Lab. Code, § 2698 et seq., the Labor Code Private Attorneys General Act of 2004, hereafter PAGA.) In the course of discovery, plaintiff Michael Williams sought contact information for fellow California employees. When the defendant employer, Marshalls of CA, LLC, resisted, Williams filed a motion to compel. The trial court granted the motion as to the store where Williams worked, but denied it as to every other California store, conditioning any renewed motion for discovery on Williams sitting for a deposition and showing some merit to the underlying action. Williams petitioned the Court of Appeal to compel the trial court to vacate its discovery order. The Court of Appeal denied

the writ, and we granted review to consider the scope of discovery available in PAGA actions.

In the absence of privilege, the right to discovery in this state is a broad one, to be construed liberally so that parties may ascertain the strength of their case and at trial the truth may be determined. Our prior decisions and those of the Courts of Appeal firmly establish that in non-PAGA class actions, the contact information of those a plaintiff purports to represent is routinely discoverable as an essential prerequisite to effectively seeking group relief, without any requirement that the plaintiff first show good cause. Nothing in the characteristics of a PAGA suit, essentially a qui tam action filed on behalf of the state to assist it with labor law enforcement, affords a basis for restricting discovery more narrowly. Nor, on this record, do other objections interposed in the trial court support the trial court's order. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Marshalls of CA (Marshalls) is a retail chain with stores throughout California. Williams worked for Marshalls at its Costa Mesa store beginning in January 2012. In 2013, Williams sued Marshalls under PAGA. The operative complaint alleges Marshalls failed to provide Williams and other aggrieved employees meal and rest periods or compensation in lieu of the required breaks. (Lab. Code, §§ 226.7, 512, subd. (a).) According to the complaint, on a companywide basis, Marshalls understaffed stores, required employees to work during meal periods without compensation, and directed managers to erase meal period violations from its time records. Marshalls also adopted a "systematic, company[]wide policy" to pay no premiums for missed breaks. Relatedly, Marshalls failed to provide Williams and other aggrieved employees timely wage payment or complete and accurate wage statements. (Lab. Code, §§ 204, 226, subd. (a).) Finally, Marshalls adopted a policy and practice of requiring Williams

2

and other aggrieved employees to carry out company business, such as bank runs and travel for training sessions, without reimbursement. (Lab. Code, §§ 2800, 2802.)

PAGA authorizes an employee who has been the subject of particular Labor Code violations to file a representative action on behalf of himself or herself and other aggrieved employees. (Lab. Code, § 2699.) Pursuant to PAGA, Williams's complaint seeks declaratory relief and civil penalties, to be shared between Williams, other aggrieved employees, and the State of California. (Lab. Code, § 2699, subd. (i).)

Early in discovery, Williams issued two special interrogatories asking Marshalls to supply the name, address, telephone number, and company employment history of each nonexempt California employee in the period March 2012 through February 2014, as well as the total number of such employees. Marshalls responded that there were approximately 16,500 employees, but refused to provide their information. It contended the request for contact and employment information statewide was overbroad because it extended beyond Williams's particular store and job classification; unduly burdensome because Williams sought private information without first demonstrating he was aggrieved or that others were aggrieved; and an invasion of the privacy of third parties under California Constitution, article I, section 1. Williams moved to compel responses.

After a hearing, the trial court granted in part and denied in part Williams's motion. The court ordered Marshalls to provide employee contact information, but only for the Costa Mesa store where Williams worked, subject to a *Belaire-West*[1] notice designed to ensure protection of third party privacy rights and an

---

[1] See *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554.

equal sharing of costs by the parties. For the company's other approximately 130 stores, Williams was willing to accept information from a representative sample of 10 to 20 percent of employees, but the court denied the motion to compel. The court left open the door to a renewed motion for discovery but required as a condition of any motion that Williams "appear for at least six productive hours of deposition." Finally, the court specified that in opposing a renewed motion for discovery, Marshalls could rely on any portion of the deposition that it believed showed the complaint was substantively meritless. Recognizing the discovery motion forced it to render a decision in an uncharted area of law, the trial court certified its order for immediate review and requested appellate guidance. (See Code Civ. Proc., § 166.1.)

Williams sought writ relief from the denial of access to employee contact information for all but one store. The Court of Appeal denied relief. It held that, as the party seeking to compel discovery, Williams must "set forth specific facts showing good cause justifying the discovery sought" (Code Civ. Proc., § 2031.310, subd. (b)(1)) but had failed to do so. In the alternative, the Court of Appeal concluded that because third party privacy interests were implicated, Williams " 'must demonstrate a compelling need for discovery' " by showing "the discovery sought is directly relevant and essential to the fair resolution of the underlying lawsuit."

We granted review to resolve issues of first impression concerning the appropriate scope of discovery in a PAGA action.

## DISCUSSION

### I.  *Standard of Review*

We review the trial court's grant or denial of a motion to compel discovery for an abuse of discretion. (*John B. v. Superior Court* (2006) 38 Cal.4th 1177,

4

1186.)  The statutory scheme vests trial courts with " 'wide discretion' " to allow or prohibit discovery.  (*Emerson Electric Co. v. Superior Court* (1997) 16 Cal.4th 1101, 1107, quoting *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 378.)  A circumspect approach to appellate review of discovery orders ensures an appropriate degree of trial court latitude in the exercise of that discretion.

That deference comes with two related caveats.  First, " '[t]he scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ."  Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' "  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)  An order that implicitly or explicitly rests on an erroneous reading of the law necessarily is an abuse of discretion.  (See *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712 & fn. 4.)

Second, trial courts issuing discovery orders and appellate courts reviewing those orders should do so with the prodiscovery policies of the statutory scheme firmly in mind.  A trial court must be mindful of the Legislature's preference for discovery over trial by surprise, must construe the facts before it liberally in favor of discovery, may not use its discretion to extend the limits on discovery beyond those authorized by the Legislature, and should prefer partial to outright denials of discovery.  (*Greyhound Corp. v. Superior Court*, *supra*, 56 Cal.2d at p. 383.)  A reviewing court may not use the abuse of discretion standard to shield discovery orders that fall short:  "Any record which indicates a failure to give adequate consideration to these concepts is subject to the attack of abuse of discretion, regardless of the fact that the order shows no such abuse on its face."  (*Id.* at p. 384; see *Pacific Tel. & Tel. Co. v. Superior Court* (1970) 2 Cal.3d 161, 171.)

II.    *The Movant's Burden When Seeking to Compel Responses to Interrogatories*

In the absence of contrary court order, a civil litigant's right to discovery is broad. "[A]ny party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc., § 2017.010; see *Davies v. Superior Court* (1984) 36 Cal.3d 291, 301 ["discovery is not limited to admissible evidence"].)[2] This right includes an entitlement to learn "the identity and location of persons having knowledge of any discoverable matter." (§ 2017.010) Section 2017.010 and other statutes governing discovery "must be construed liberally in favor of disclosure unless the request is clearly improper by virtue of well-established causes for denial." (*Greyhound Corp. v. Superior Court*, *supra*, 56 Cal.2d at p. 377.) This means that "disclosure is a matter of right unless statutory or public policy considerations clearly prohibit it." (*Id.* at p. 378.)

A party may use interrogatories to request the identity and location of those with knowledge of discoverable matters. (Code Civ. Proc., § 2030.010.) To show an interrogatory seeks relevant, discoverable information "is not the burden of [the party propounding interrogatories]. As a litigant, it is entitled to demand answers to its interrogatories, as a matter of right, and without a prior showing, unless the

---

[2]    We explained in *Emerson Electric Co. v. Superior Court*, *supra*, 16 Cal.4th 1101, that statements made in connection with the state's 1957 discovery act (Stats. 1957, ch. 1904, p. 3322) concerning general discovery principles continue to apply to the Civil Discovery Act of 1986 (Stats. 1986, ch. 1334, p. 4700), "which retain[s] the expansive scope of discovery" previously contemplated (*Emerson Electric Co.*, at p. 1108). Such statements apply equally to 2004's Civil Discovery Act, which reorganizes and carries forward without substantive change the state's discovery rules. (Stats. 2004, ch. 182, § 61, p. 942 ["Nothing in this act is intended to substantively change the law of civil discovery."].)

party on whom those interrogatories are served objects and shows cause why the questions are not within the purview of the code section." (*West Pico Furniture Co. v. Superior Court* (1961) 56 Cal.2d 407, 422; see *Greyhound Corp. v. Superior Court*, *supra*, 56 Cal.2d at p. 388.) While the party propounding interrogatories may have the burden of filing a motion to compel if it finds the answers it receives unsatisfactory, the burden of justifying any objection and failure to respond remains at all times with the party resisting an interrogatory. (*Coy v. Superior Court* (1962) 58 Cal.2d 210, 220–221.)

Accordingly, Williams was presumptively entitled to an answer to his interrogatory seeking the identity and contact information of his fellow Marshalls employees. Marshalls had the burden of establishing cause to refuse Williams an answer. The trial court was limited to determining whether, for any objections timely interposed, Marshalls had carried that burden. (See *Coy v. Superior Court*, *supra*, 58 Cal.2d at p. 222; *West Pico Furniture Co. v. Superior Court*, *supra*, 56 Cal.2d at p. 414.)

Three Marshalls objections are at issue. First, Marshalls contends Williams's request for statewide employee contact information "is overbroad in that it seeks information beyond the scope of permissible discovery in that it extends to individuals outside of the position, job classification, and location, in which Plaintiff worked." Second, Marshalls argues the interrogatory "is unduly burdensome, in that Plaintiff is requesting private information about thousands of third parties, without making a prima facie showing that he is an aggrieved employee or that any aggrieved employees exist outside of the store where he worked." Third, Marshalls objects to the request "to the extent it seeks private information that is protected from disclosure by Article I section 1 of the California Constitution without consent."

7

The hearing transcript and trial court order reflect that the court limited discovery based on considerations of overbreadth and undue burden. The Court of Appeal reasoned that privacy concerns offered additional justification for the order. We consider each objection in turn.

III.    *Overbreadth*

Marshalls asserts Williams exceeded "the scope of permissible discovery" by requesting contact information for employees not sharing his position, job classification, and store location. The trial court sustained the geographic objection. As this objection involves no claim of privilege, whether contact information for employees at other stores is discoverable turns in the first instance on whether the request for it is "reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc., § 2017.010.) Under the Legislature's "very liberal and flexible standard of relevancy," any "doubts as to relevance should generally be resolved in favor of permitting discovery." (*Pacific Tel. & Tel. Co. v. Superior Court*, *supra*, 2 Cal.3d at p. 173.)

A.    *Relevance*

The operative complaint alleges Williams worked for Marshalls as a nonexempt hourly employee in Costa Mesa, California, and that Marshalls also employs other nonexempt hourly employees "in various locations throughout California." The complaint seeks relief on behalf of Williams and other " 'aggrieved employees,' " defined as "current or former employees" of Marshalls who were subject to one or more of the Labor Code violations described in the complaint. According to the complaint, Marshalls failed to provide "Plaintiff and other aggrieved employees" meal and rest breaks, accurate wage statements, timely payment of earned wages, and business expense reimbursement. Marshalls "implemented a systematic, company[]wide policy" to pay no missed meal period premiums and to cleanse time records of evidence of missed or noncompliant meal

8

periods. Marshalls also "implemented a systematic, company[]wide policy to not pay rest period premiums." Marshalls "had, and continue[s] to have, a policy and practice of requiring employees, including Plaintiff and aggrieved employees" to leave its stores to undergo training and to conduct company financial transactions, as well as an ongoing "policy of not reimbursing employees, including Plaintiff and aggrieved employees, for said business-related expenses and costs."

On its face, the complaint alleges Marshalls committed Labor Code violations, pursuant to systematic companywide policies, against Williams and others among its nonexempt employees in California, and seeks penalties and declaratory relief on behalf of Williams and any other injured California employees. The disputed interrogatory seeks to identify Marshalls's other California employees, inferentially as a first step to identifying other aggrieved employees and obtaining admissible evidence of the violations and policies alleged in the complaint.[3] The Courts of Appeal have, until the decision in this case, uniformly treated such a request as clearly within the scope of discovery permitted under Code of Civil Procedure section 2017.010.

For example, in *Puerto v. Superior Court* (2008) 158 Cal.App.4th 1242, a precertification wage and hour class action, the plaintiff sought contact information for thousands of the defendant's California employees. The trial court granted a motion to compel provision of the information, subject to a requirement that the employees opt in to disclosure. The Court of Appeal concluded plaintiff

---

[3] Of course, the discovery may also fail to reveal any, or many, other violations or unlawful policies, but that is an equally worthy end result. The discovery statutes were intended to curtail surprises, enable each side to learn as much as possible about the strengths *and weaknesses* of its case, and thereby facilitate realistic settlements and efficient trials. (See *Fairmont Ins. Co. v. Superior Court* (2000) 22 Cal.4th 245, 253, fn. 2; *Greyhound Corp. v. Superior Court*, *supra*, 56 Cal.2d at p. 376.)

was plainly entitled to the employee contact information, and even limiting disclosure by imposing an opt-in requirement was an abuse of discretion.  As the court explained, "[c]entral to the discovery process is the identification of potential witnesses.  'The disclosure of the names and addresses of potential witnesses is a routine and essential part of pretrial discovery.'  [Citation.]  Indeed, our discovery system is founded on the understanding that parties use discovery to obtain names and contact information for possible witnesses as the starting point for further investigations . . . ."  (*Id.* at pp. 1249–1250; see, e.g., *Crab Addison, Inc. v. Superior Court* (2008) 169 Cal.App.4th 958, 967 [trial court properly ordered disclosure of contact information for defendant's California employees; only in " 'unusual circumstances' " will such discovery be restricted]; *Lee v. Dynamex, Inc.* (2008) 166 Cal.App.4th 1325, 1331 [in putative class action alleging wage and hour violations following misclassification of workers as independent contractors, it was an abuse of discretion not to compel disclosure of fellow workers' contact information on the ground no class had been certified yet]; *Belaire-West Landscape, Inc. v. Superior Court*, *supra*, 149 Cal.App.4th at pp. 560–562 [contact information for fellow employees in putative wage and hour class actions is routinely discoverable].)

These cases correctly took to heart the lessons of our decision in *Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360, a putative consumer class action, where we reversed limits the Court of Appeal had imposed on plaintiff access to contact information for others he sought to represent.  In the course of addressing privacy objections and reconciling the competing interests at stake, we explained that "[c]ontact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case."  (*Id.* at p. 373.)  Such potential class members will often qualify as "percipient witnesses," whose

10

contact information the discovery statutes explicitly make a "proper subject[] of . . . discovery." (*Id.* at p. 374, italics omitted, citing Code Civ. Proc., § 2017.010.) Limiting discovery would grant the defendant a monopoly on access to its customers or employees and their experiences and artificially tilt the scales in the ensuing litigation. (*Pioneer Electronics,* at p. 374.)

We recognize that in a particular case there may be special reason to limit or postpone a representative plaintiff's access to contact information for those he or she seeks to represent, but the default position is that such information is within the proper scope of discovery, an essential first step to prosecution of any representative action.

## B. *PAGA*

Marshalls makes two arguments based on the nature of a PAGA action for why the foregoing principles should not apply here. First, it contends the text of PAGA reflects a legislative judgment that broad discovery in PAGA actions should be limited until after a plaintiff has supplied proof of alleged violations. Second, it contends the rationale of *Pioneer Electronics* and the Court of Appeal decisions that have followed it is uniquely dependent on the class action context in which those decisions were rendered, and different conclusions should be reached in the context of a PAGA action.

The Legislature enacted PAGA to remedy systemic underenforcement of many worker protections. This underenforcement was a product of two related problems. First, many Labor Code provisions contained only criminal sanctions, and district attorneys often had higher priorities. Second, even when civil sanctions were attached, the government agencies with existing authority to ensure compliance often lacked adequate staffing and resources to police labor practices throughout an economy the size of California's. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 379; see Sen. Rules Com., Off. of Sen.

11

Floor Analyses, analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) as amended Sept. 2, 2003, pp. 4–5.)  The Legislature addressed these difficulties by adopting a schedule of civil penalties " 'significant enough to deter violations' " for those provisions that lacked existing noncriminal sanctions, and by deputizing employees harmed by labor violations to sue on behalf of the state and collect penalties, to be shared with the state and other affected employees.  (*Iskanian*, at p. 379; see Lab. Code, § 2699.)

As a condition of suit, an aggrieved employee acting on behalf of the state and other current or former employees must provide notice to the employer and the responsible state agency "of the specific provisions of [the Labor Code] alleged to have been violated, including the facts and theories to support the alleged violation." (Lab. Code, § 2699.3, subd. (a)(1)(A); see *id.*, subd. (c)(1)(A) [same].)  If the agency elects not to investigate, or investigates without issuing a citation, the employee may then bring a PAGA action.  (*Id.*, subd. (a)(2).)

Marshalls interprets the notice provision as imposing a requirement that an aggrieved employee seeking to pursue civil penalties on behalf of other current or former employees must have some modicum of substantial proof before proceeding with discovery, a departure from the more general principle of Code of Civil Procedure section 2017.010 that discovery is the means by which proof of allegations is developed.  The text does not support this view.  Nothing in Labor Code section 2699.3, subdivision (a)(1)(A), indicates the "facts and theories" provided in support of "alleged" violations must satisfy a particular threshold of weightiness, beyond the requirements of nonfrivolousness generally applicable to any civil filing. (See Code Civ. Proc., § 128.7.)  The evident purpose of the notice requirement is to afford the relevant state agency, the Labor and Workforce Development Agency, the opportunity to decide whether to allocate scarce resources to an investigation, a decision better made with knowledge of the

allegations an aggrieved employee is making and any basis for those allegations. Notice to the employer serves the purpose of allowing the employer to submit a response to the agency (see Lab. Code, § 2699.3, subd. (a)(1)(B)), again thereby promoting an informed agency decision as to whether to allocate resources toward an investigation. Neither purpose depends on requiring employees to submit only allegations that can already be backed by some particular quantum of admissible proof.

PAGA's standing provision similarly contains no evidence of a legislative intent to impose a heightened preliminary proof requirement. Suit may be brought by any "aggrieved employee" (Lab. Code, § 2699, subd. (a)); in turn, an " 'aggrieved employee' " is defined as "any person who was employed by the *alleged* violator and against whom one or more of the *alleged* violations was committed" (*id.*, subd. (c), italics added). If the Legislature intended to demand more than mere allegations as a condition to the filing of suit or preliminary discovery, it could have specified as much. That it did not implies no such heightened requirement was intended.

Moreover, to insert such a requirement into PAGA would undercut the clear legislative purposes the act was designed to serve. PAGA was intended to advance the state's public policy of affording employees workplaces free of Labor Code violations, notwithstanding the inability of state agencies to monitor every employer or industry. (*Iskanian v. CLS Transportation Los Angeles, LLC*, *supra*, 59 Cal.4th at p. 379; *Arias v. Superior Court* (2009) 46 Cal.4th 969, 980–981.) By expanding the universe of those who might enforce the law, and the sanctions violators might be subject to, the Legislature sought to remediate present violations and deter future ones. These purposes would be ill-served by presuming, notwithstanding the failure explicitly to so indicate in the text, that

13

deputized aggrieved employees must satisfy a PAGA-specific heightened proof standard at the threshold, before discovery.

Alternatively, Marshalls argues the nature of a PAGA action distinguishes this case from representative actions brought pursuant to formalized class action procedures. Marshalls notes, correctly, that PAGA actions and certified class actions have a host of identifiable procedural differences. PAGA does not make other potentially aggrieved employees parties or clients of plaintiff's counsel, does not impose on a plaintiff or counsel any express fiduciary obligations, and does not subject a plaintiff or counsel to scrutiny with respect to the ability to represent a large class.[4] The discovery rights recognized in wage and hour class actions, Marshalls argues, should only be coextensive with these protections.

However, nothing in *Pioneer Electronics (USA), Inc. v. Superior Court*, *supra*, 40 Cal.4th 360 or its progeny depends on these features to justify the discovery ordered. Access to contact information will often be warranted even before the adequacy of the named plaintiff and counsel's representation has been vetted, a class certified, absent putative class members made parties, and

---

[4] These duties are necessary in the class action context to protect absent employees' due process rights. (See *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 463.) However, no similar due process concerns arise under PAGA because absent employees do not own a personal claim for PAGA civil penalties (see *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003), and whatever personal claims the absent employees might have for relief are not at stake (*Iskanian v. CLS Transportation Los Angeles, LLC*, *supra*, 59 Cal.4th at p. 381 ["The civil penalties recovered on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities"]). (See also *Sakkab v. Luxottica Retail North America, Inc.* (9th Cir. 2015) 803 F.3d 425, 436 ["Because a PAGA action is a statutory action for penalties brought as a proxy for the state, rather than a procedure for resolving the claims of other employees, there is no need to protect absent employees' due process rights in PAGA arbitrations"].)

14

heightened duties imposed. (See *Crab Addison, Inc. v. Superior Court*, *supra*, 169 Cal.App.4th at pp. 962, 969–975; *Lee v. Dynamex, Inc.*, *supra*, 166 Cal.App.4th at pp. 1337–1338; *CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 292–296; *Belaire-West Landscape, Inc. v. Superior Court*, *supra*, 149 Cal.App.4th at pp. 556, 562.) Even were we to assume, without deciding, that counsel owes a fiduciary duty to absent class members from the moment a complaint is filed, before certification (see *Kullar v. Foot Locker Retail, Inc.* (2011) 191 Cal.App.4th 1201, 1206; *In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation* (3d Cir. 1995) 55 F.3d 768, 801), the existence of any such duty would supply neither the rationale nor a necessary condition for discovery of the contact information of those with potentially aligned interests.

While the differences between a class action and a PAGA action bear minimal relation to the reasons fellow employee contact information is discoverable, the similarities between these forms of action directly pertain. In a class action, fellow class members are potential percipient witnesses to alleged illegalities, and it is on that basis their contact information becomes relevant. (*Pioneer Electronics (USA), Inc. v. Superior Court*, *supra*, 40 Cal.4th at p. 374; *Crab Addison, Inc. v. Superior Court*, *supra*, 169 Cal.App.4th at p. 969; *Puerto v. Superior Court*, *supra*, 158 Cal.App.4th at p. 1254.) Likewise in a PAGA action, the burden is on the plaintiff to establish any violations of the Labor Code, and a complaint that alleges such violations makes any employee allegedly aggrieved a percipient witness and his or her contact information relevant and discoverable. (See Lab. Code, § 2699, subds. (c), (g)(1); Code Civ. Proc., § 2017.010; *Sakkab v. Luxottica Retail North America, Inc.*, *supra*, 803 F.3d at p. 438 ["The amount of penalties an employee may recover is measured by the number of violations an employer has committed, and the violations may involve multiple employees."].)

Next, absent fellow employees will be bound by the outcome of any PAGA action (*Arias v. Superior Court*, *supra*, 46 Cal.4th at p. 986), just as absent class members are bound (see *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1074; *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 474). To allow broad discovery of contact information in one type of representative action but not the other, and impose unique hurdles in PAGA actions that inhibit communication with affected employees, would enhance the risk those employees will be bound by a judgment they had no awareness of and no opportunity to contribute to or oppose.

Last, overlapping policy considerations support extending PAGA discovery as broadly as class action discovery has been extended. California public policy favors the effective vindication of consumer protections. (*Pioneer Electronics (USA), Inc. v. Superior Court*, *supra*, 40 Cal.4th at p. 374.) State regulation of employee wages, hours and working conditions is remedial legislation for the benefit of the state's workforce. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026–1027.) Discovery of fellow consumer or employee contact information can be an essential precursor to meaningful classwide enforcement of consumer and worker protection statutes. (*Pioneer Electronics*, at p. 374; *Crab Addison, Inc. v. Superior Court*, *supra*, 169 Cal.App.4th at p. 968; *Puerto v. Superior Court*, *supra*, 158 Cal.App.4th at p. 1256.) Similar state policies animate PAGA. Representative PAGA actions "directly enforce *the state's* interest in penalizing and deterring employers who violate California's labor laws." (*Iskanian v. CLS Transportation Los Angeles, LLC*, *supra*, 59 Cal.4th at p. 387; see *Arias v. Superior Court*, *supra*, 46 Cal.4th at pp. 980–981.) Hurdles that impede the effective prosecution of representative PAGA actions undermine the Legislature's objectives. (See *Iskanian*, at p. 384.) It follows that in PAGA cases, as in the class action context, state policy favors access to contact

16

information for fellow employees alleged to have been subjected to Labor Code violations.

Both practical considerations and the statutory framework mitigate any concerns Marshalls may have about the release of employee contact information to a plaintiff and counsel lacking a fiduciary relationship with those employees and thus under no formal obligation to act in their best interests. Practically, the interests of plaintiff, counsel, and other potentially aggrieved employees are largely aligned. All stand to gain from proving as convincingly as possible as many Labor Code violations as the evidence will sustain, thereby maximizing the recovery for aggrieved employees as well as any potential attorney fee award. (See Lab. Code, § 2699, subds. (g)(1), (i).) Legally, a trial court may issue a protective order conditioning discovery "on terms and conditions that are just" such as requiring confidentiality and prohibiting use outside a given case. (Code Civ. Proc., § 2030.090, subd. (c); see *id.*, subd. (b).) Finally, PAGA settlements are subject to trial court review and approval, ensuring that any negotiated resolution is fair to those affected. (Lab. Code, § 2699, subd. (*l*)(2).)

In sum, Williams's interrogatory sought information within, not exceeding, the legitimate scope of discovery. The trial court had no discretion to disregard the allegations of the complaint making this case a statewide representative action from its inception. The Court of Appeal likewise misread the complaint when it described Williams's claim as "parochial" and thus affording no basis for statewide contact information. Nothing in the nature of PAGA renders the interrogatory overbroad or justifies the trial court's order.

IV.    *Undue Burden*

In the alternative, Marshalls argues the interrogatory is unduly burdensome because it seeks contact information for thousands of employees without a prior showing that Williams himself has been subject to Labor Code violations, or that

17

others have been.  The trial court agreed, denying discovery until Williams had sat for a deposition and expressly authorizing Marshalls to resist any future motion for discovery with evidence the complaint's allegations were meritless.

A trial court "shall limit the scope of discovery if it determines that the burden, expense, or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence." (Code Civ. Proc., § 2017.020, subd. (a).)[5]  However, as with other objections in response to interrogatories, the party opposing discovery has an obligation to supply the basis for this determination.  An "objection based upon burden must be sustained by evidence showing the quantum of work required." (*West Pico Furniture Co. v. Superior Court*, *supra*, 56 Cal.2d at p. 417.)  As the objecting party, Marshalls had the burden of supplying supporting evidence, but in response to Williams's motion to compel it offered none.  Given this, the trial court had nothing in the record upon which to base a comparative judgment that any responsive burden would be undue or excessive, relative to the likelihood of admissible evidence being discovered.[6]

In lieu of evidence, Marshalls contended as a legal matter that Williams should be required to submit proof of his case before being allowed statewide

---

**5**     Such limits need not be all or nothing.  Where the objection is one of undue burden, trial courts should consider alternatives such as partial disclosure or a shifting of costs before settling on a complete denial of discovery.  (*Greyhound Corp. v. Superior Court*, *supra*, 56 Cal.2d at p. 380.)

**6**     Marshalls's discovery responses did identify the number of employees for whom information was sought but, while relevant, this information alone could not establish the requisite undue burden without further evidence of the time and cost required to respond.  For example, depending on the nature of any computer database Marshalls might maintain, providing information for 10,000 employees might prove little different than for 1,000, or 100.

18

discovery. Accepting this argument, the trial court effectively held the pleading of a statewide PAGA claim is insufficient to support discovery of statewide fellow employee contact information without a further showing of cause. As we shall discuss, however, the Code of Civil Procedure does not authorize a trial court to interpose a proof of the merits requirement before ordering responses to interrogatories in the absence of any evidence of the burden responding would entail, and trial courts lack discretion to augment the limitations on discovery established by the Legislature. (*Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 402.)

As a general matter, the statutory scheme imposes no obligation on a party propounding interrogatories to establish good cause or prove up the merits of any underlying claims. (See Code Civ. Proc., §§ 2017.010, 2030.010–2030.310.) In affirming the trial court's order, the Court of Appeal justified the trial court's good cause requirement by reference to authorities governing demands for inspection, copying, testing, or sampling, which do require a good cause showing before production may be compelled. (See Code Civ. Proc., §§ 2025.450, subd. (b)(1); 2031.310, subd. (b)(1); *Calcor Space Facility, Inc. v. Superior Court* (1997) 53 Cal.App.4th 216, 223.) But those authorities have no application to interrogatories. (See Code Civ. Proc., § 2030.300.)

Before this court, Marshalls concedes the statutory scheme does not support the Court of Appeal's transplanting of a good cause requirement applicable only to other methods of discovery to the interrogatories in this case. Marshalls reasons instead that the trial court's imposition of a merits requirement can be justified under Code of Civil Procedure section 2019.020. That provision sets out the general rule that the various tools of discovery may be used by each party in any order, and one party's discovery "shall not operate to delay the discovery of any other party." (*Id.*, subd. (a).) However, if a party shows "good cause," the trial

19

court "may establish the sequence and timing of discovery for the convenience of parties and witnesses and in the interests of justice." (*Id.*, subd. (b).) But Marshalls did not file a section 2019.020 motion, and we thus have no occasion to decide what showing might suffice to warrant a court order sequencing discovery.

Marshalls also contends the trial court had discretion, based on the "extremely meager showing that plaintiffs' counsel has made in this case," to condition interrogatory responses on prior submission to a deposition and substantive proof of the complaint's allegations. But California law has long made clear that to require a party to supply proof of any claims or defenses as a condition of discovery in support of those claims or defenses is to place the cart before the horse. The Legislature was aware that establishing a broad right to discovery might permit parties lacking any valid cause of action to engage in "fishing expedition[s]," to a defendant's inevitable annoyance. (*Greyhound Corp. v. Superior Court*, *supra*, 56 Cal.2d at p. 385.) It granted such a right anyway, comfortable in the conclusion that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." (*Id.* at p. 386.)

That the eventual proper scope of a putative representative action is as yet uncertain is no obstacle to discovery; a party may proceed with interrogatories and other discovery methods precisely in order to ascertain that scope. (*Union Mut. Life Ins. Co. v. Superior Court* (1978) 80 Cal.App.3d 1, 9–12.) In *Union Mut. Life Ins. Co.*, the plaintiff in an insurance dispute issued interrogatories seeking information about other insureds nationwide. The defendant objected on the ground no national class action had been alleged and the answers at best would inform the plaintiff as to whether to amend to allege such a class action. The Court of Appeal explained, "[t]his is the precise reason why the discovery should be permitted." (*Id.* at p. 12.) "California law permits the use of discovery to get information necessary to plead a cause of action" (*id.* at p. 11); it also permits the

20

use of discovery to determine whether an individual dispute is only a drop in the pond and a broader representative action is warranted. "Doubts as to whether particular matters will aid in a party's preparation for trial should generally be resolved in favor of permitting discovery; this is especially true when the precise issues of the litigation or the governing legal standards are not clearly established." (*Ibid.*; see *Colonial Life & Accident Ins. Co. v. Superior Court* (1982) 31 Cal.3d 785, 791, fn. 8.) In pursuing such discovery, the strength or weakness of the plaintiff's individual claim is immaterial: "[I]t is well established that relevancy of the subject matter does not depend upon a legally sufficient pleading, nor is it restricted to the issues formally raised in the pleadings." (*Union Mut. Life Ins. Co.*, at p. 10.)

It follows that a party allegedly subject to an illegal employment policy need not already have direct, personal knowledge of how prevalent that policy is to seek contact information for other employees that may allow the plaintiff to determine the proper extent of any representative action. Instead, the contact information is reasonably understood as a legitimate "starting point for further investigations" through which a plaintiff may " 'educate [himself or herself] concerning [the parties'] claims and defenses.' " (*Puerto v. Superior Court*, *supra*, 158 Cal.App.4th at pp. 1250, 1249.)

In sum: Marshalls made no showing of the burden disclosure would impose, and the statutory scheme imposes no good cause requirement for seeking information by interrogatory. Accordingly, on the record here, claims of undue burden do not support the trial court's refusal to permit Williams discovery of statewide employee contact information until he supplies Marshalls with discovery and establishes both some merit to his personal claim and reason to be certain others had similar claims.

21

V.  *Privacy*

Finally, Marshalls contends the trial court could restrict discovery in order to protect the privacy interests of other employees.

The state Constitution expressly grants Californians a right of privacy. (Cal. Const., art. I, § 1.)  Protection of informational privacy is the provision's central concern.  (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35.)  In *Hill*, we established a framework for evaluating potential invasions of privacy.  The party asserting a privacy right must establish a legally protected privacy interest, an objectively reasonable expectation of privacy in the given circumstances, and a threatened intrusion that is serious.  (*Id.* at pp. 35–37.)  The party seeking information may raise in response whatever legitimate and important countervailing interests disclosure serves, while the party seeking protection may identify feasible alternatives that serve the same interests or protective measures that would diminish the loss of privacy.  A court must then balance these competing considerations.  (*Id.* at pp. 37–40.)

The *Hill* test, conceived in the context of a pleaded cause of action for invasion of privacy, has been applied more broadly, including to circumstances where litigation requires a court to reconcile asserted privacy interests with competing claims for access to third party contact information.  (See *County of Los Angeles v. Los Angeles County Employee Relations Com.* (2013) 56 Cal.4th 905, 926–932; *Pioneer Electronics (USA), Inc. v. Superior Court*, *supra*, 40 Cal.4th at pp. 370–374.)  In *Pioneer Electronics*, we used the *Hill* framework to resolve the same question the trial court faced here—the extent to which a litigant should have access to nonparty contact information.  In the context of a consumer class action, we concluded fellow consumers who had already complained about a product defect had little or no expectation their contact information would be withheld from a plaintiff seeking relief from the manufacturer on behalf of

22

consumers (*Pioneer Electronics*, at p. 372), that disclosure would involve "no serious invasion of privacy" (*id.* at pp. 372–373), and in any event that conditioning disclosure on an opt-in notice might significantly limit the ability of named plaintiffs "to redress a variety of social ills" through collective action (*id.* at p. 374).

In turn, *Pioneer Electronics* was extended to wage and hour class actions by *Belaire-West Landscape, Inc. v. Superior Court*, *supra*, 149 Cal.App.4th 554. Before class certification, the named plaintiff sought statewide employee contact information for the preceding five years. While fellow employees generally had a reasonable expectation of privacy in their contact information, the court doubted they would have "wish[ed] it to be withheld from a class action plaintiff who seeks relief for violations of employment laws." (*Id.* at p. 561.) Nor was any prospective invasion of privacy serious: "the information, while personal, was not particularly sensitive, as it was contact information, not medical or financial details." (*Id.* at pp. 561–562.) Moreover, the balance of competing interests favored disclosure even more clearly than in *Pioneer Electronics*; "at stake [was] the fundamental public policy underlying California's employment laws." (*Belaire-West*, at p. 562.) The *Belaire-West* trial court was correct to order disclosure, subject to employees being given notice of the action, assurance they were under no obligation to talk to plaintiffs' counsel, and an opportunity to opt out of disclosure by returning an enclosed postcard.

Courts subsequent to *Belaire-West* have uniformly applied the same analysis to reach the same conclusion: In wage and hour collective actions, fellow employees would not be expected to want to conceal their contact information from plaintiffs asserting employment law violations, the state policies in favor of effective enforcement of these laws weigh on the side of disclosure, and any residual privacy concerns can be protected by issuing so-called *Belaire-West*

23

notices affording notice and an opportunity to opt out from disclosure. (See *Crab Addison, Inc. v. Superior Court*, *supra*, 169 Cal.App.4th 958; *Lee v. Dynamex, Inc.*, *supra*, 166 Cal.App.4th 1325; *Puerto v. Superior Court*, *supra*, 158 Cal.App.4th 1242.)

Here, the trial court did not rest its decision to limit discovery on concerns that broader disclosures would inappropriately invade any privacy interests. No discussion of *Hill*, *Pioneer Electronics*, or the governing balancing test appears in the hearing transcript or the court's order. What discovery the trial court did allow, it conditioned on prior issuance of a *Belaire-West* notice to fellow Marshalls employees. From this, it appears the trial court concluded Marshalls's privacy objections warranted affording Williams's fellow employees notice and the opportunity to opt out from disclosure, but did not support otherwise foreclosing discovery.

This does not mean the court's order could not be affirmed on privacy grounds if indeed such concerns supported denial of discovery. The rule that a judgment may be affirmed on any basis fairly supported by the record applies equally to orders denying further responses to interrogatories. (*West Pico Furniture Co. v. Superior Court*, *supra*, 56 Cal.2d at pp. 413–414.) Because it interposed a timely privacy objection, Marshalls can rely on that ground as a basis for urging affirmance. On the merits, however, the privacy argument fails. Considering the *Hill* factors, we conclude they cannot support a complete bar against disclosure of the information Williams seeks.[7]

---

[7]     The first *Hill* factor, whether "a legally recognized privacy interest" exists, is always an issue of law. The second and third factors, the existence of "a reasonable expectation of privacy in the circumstances" and the seriousness of any invasion of privacy, may be resolved by a court as a matter of law when there are no disputed material facts. (*Hill v. National Collegiate Athletic Assn.*, *supra*, 7

*(footnote continued on next page)*

24

To be sure, absent employees have a bona fide interest in the confidentiality of their contact information. While less sensitive than one's medical history or financial data, "home contact information is generally considered private." (*County of Los Angeles v. Los Angeles County Employee Relations Com.*, *supra*, 56 Cal.4th at p. 927; see *Pioneer Electronics (USA), Inc. v. Superior Court*, *supra*, 40 Cal.4th at p. 372; *Belaire-West Landscape, Inc. v. Superior Court*, *supra*, 149 Cal.App.4th at pp. 561–562.) However, the second *Hill* requirement, a reasonable expectation of privacy in the particular circumstances, is not met. Like other courts, we doubt Williams's fellow employees would expect that information to be withheld from a plaintiff seeking to prove labor law violations committed against them and to recover civil penalties on their behalf. (See *Crab Addison, Inc. v. Superior Court*, *supra*, 169 Cal.App.4th at p. 967; *Lee v. Dynamex, Inc.*, *supra*, 166 Cal.App.4th at pp. 1337–1338; *Puerto v. Superior Court*, *supra*, 158 Cal.App.4th at p. 1253; *Belaire-West*, at p. 561; Lab. Code, § 2699, subd. (i).) Rather, fellow employees "might reasonably expect, and even hope, that their names and addresses would be given to" a plaintiff seeking to vindicate their rights. (*Pioneer Electronics*, at p. 372.) At a minimum, fellow employees would have no reason to expect their information would be categorically withheld, without even an opportunity to opt in to or opt out of disclosure. (See *ibid.* [considering as part of the particular circumstances relevant to an individual's expectation the opportunities to consent or withhold consent before disclosure].)

---

*(footnote continued from previous page)*

Cal.4th at p. 40.) Because there are no disputed material facts, we may conduct a *Hill* analysis for the first time on appeal.

25

The third requirement, a serious invasion of privacy, is also absent. Williams was willing to accept as a condition of disclosure, and share the costs of, a *Belaire-West* notice to employees affording them an opportunity to opt out of having their information shared. The trial court recognized the Costa Mesa store employees' privacy interests and any potential desire to avoid disclosure or contact could be protected by conditioning disclosure on issuance of such a notice. Employees at other stores have no different privacy interests and expectations than those for whom disclosure was ordered; there is no reason to think their interests could not have been accommodated in a like manner. (See *Puerto v. Superior Court*, *supra*, 158 Cal.App.4th at p. 1255 [an increase in the number of fellow employees for whom information is sought in no way "alters the underlying analysis of the seriousness of the intrusion on the witnesses' privacy rights"].) As in *Pioneer Electronics*, there is no justification for concluding disclosure of contact information, after affording affected individuals the opportunity to opt out, would entail a serious invasion of privacy. (See *Pioneer Electronics (USA), Inc. v. Superior Court*, *supra*, 40 Cal.4th at p. 373.)

Because two of the three threshold *Hill* requirements are absent here, we need not move on to a balancing of interests. (*County of Los Angeles v. Los Angeles County Employee Relations Com.*, *supra*, 56 Cal.4th at p. 926; *Pioneer Electronics (USA), Inc. v. Superior Court*, *supra*, 40 Cal.4th at p. 373; *Hill v. National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th at pp. 39–40.) We observe in passing, however, that complete bans on disclosure to vindicate privacy interests, or disclosure subject to an opt-in requirement, may significantly hamper the ability of aggrieved employees, deputized by the state, to assist in broad and effective enforcement of the labor laws. (See *Pioneer Electronics (USA), Inc. v. Superior Court*, *supra*, 40 Cal.4th at p. 374; *Puerto v. Superior Court*, *supra*, 158 Cal.App.4th at p. 1259.) Future courts confronted with privacy objections to

similar requested disclosures should be mindful of this potential impact when weighing whether to embrace a complete ban like the one imposed here or instead to seek alternative solutions that might accommodate the competing interests at stake.

The Court of Appeal used as its starting point for a privacy analysis not this court's *Hill* framework, as directly applied to the problem of disclosing contact information in discovery by *Pioneer Electronics*, but a trio of Court of Appeal cases. (See *Planned Parenthood Golden Gate v. Superior Court* (2000) 83 Cal.App.4th 347; *Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050; *Lantz v. Superior Court* (1994) 28 Cal.App.4th 1839.) These cases correctly recognize that when a discovery request seeks information implicating the constitutional right of privacy, to order discovery simply upon a showing that the Code of Civil Procedure section 2017.010 test for relevance has been met is an abuse of discretion. (*Planned Parenthood Golden Gate*, at p. 358; *Lantz*, at pp. 1853–1857.) But they also stand for the proposition that whenever discovery of facially private information is sought, the party seeking discovery must demonstrate a " 'compelling state interest' " (*Planned Parenthood Golden Gate*, at p. 357, quoting *Johnson*, at p. 1071) or "compelling need" (*Lantz*, at p. 1853). Although in this they are not alone (see *post*, pp. 29–30, fn. 8), they nevertheless are incorrect.

The "compelling interest" or "compelling need" test has its roots in *White v. Davis* (1975) 13 Cal.3d 757, which held that the state constitutional privacy right "does not purport to prohibit all incursion into individual privacy but rather [requires] that any such intervention must be justified by a compelling interest." (*Id.* at p. 775; see *ibid.* [citing the ballot argument in favor of the privacy initiative as allowing abridgement of privacy rights only in cases of " 'compelling public need' "]; *Long Beach City Employees Assn. v. City of Long Beach* (1986) 41

Cal.3d 937, 943; *City of Santa Barbara v. Adamson* (1980) 27 Cal.3d 123, 130–131; *Britt v. Superior Court* (1978) 20 Cal.3d 844, 855–856; *Loder v. Municipal Court* (1976) 17 Cal.3d 859, 864.)  In *Hill v. National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th at pages 20–35, we considered this test at length and clarified its purview.  We explained that not "every assertion of a privacy interest under article I, section 1 must be overcome by a 'compelling interest.'  Neither the language nor history of the Privacy Initiative unambiguously supports such a standard.  In view of the far-reaching and multifaceted character of the right to privacy, such a standard imports an impermissible inflexibility into the process of constitutional adjudication."  (*Id.* at pp. 34–35.)  A " 'compelling interest' " is still required to justify "an obvious invasion of an interest fundamental to personal autonomy."  (*Id.* at p. 34.)  But whenever lesser interests are at stake, the more nuanced framework discussed above applies, with the strength of the countervailing interest sufficient to warrant disclosure of private information varying according to the strength of the privacy interest itself, the seriousness of the invasion, and the availability of alternatives and protective measures.  (*Id.* at pp. 35–40; see *Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 287–288.)

We did not formally disapprove any of the many cases that had derived from *White v. Davis*, *supra*, 13 Cal.3d 757 and its progeny the assumption that a compelling interest or need is always required to justify discovery of private information.  Perhaps as a consequence, the compelling interest test quickly expanded beyond the narrow boundaries we had set for it in *Hill v. National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th 1.  *Lantz v. Superior Court*, *supra*, 28 Cal.App.4th 1839, decided a few months after *Hill*, continued to rely on pre-*Hill* cases for the governing standard without critically examining whether the privacy interest at stake was of the sort that would require a compelling interest to justify encroachment.  In turn, other cases relied on *Lantz*, so principles derived from

28

*White* but strictly limited in *Hill* have continued to be treated as generally applicable in cases to the present day.

Marshalls argues *Hill v. National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th 1 did not overrule the compelling interest/compelling need test, but only concluded such an interest need not be shown in every case. This is correct so far as it goes. A threatened invasion of privacy can, to be sure, be extremely grave, and to the extent it is, to conclude in a given case that only a compelling countervailing interest and an absence of alternatives will suffice to justify the intrusion may be right. (See, e.g., *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 340–342.) But the flaw in the Court of Appeal's legal analysis, and in the cases it relied upon, is the de facto starting assumption that such an egregious invasion is involved in every request for discovery of private information. Courts must instead place the burden on the party asserting a privacy interest to establish its extent and the seriousness of the prospective invasion, and against that showing must weigh the countervailing interests the opposing party identifies, as *Hill* requires. What suffices to justify an invasion will, as Marshalls recognizes, vary according to the context. Only obvious invasions of interests fundamental to personal autonomy must be supported by a compelling interest. (*Hill*, at p. 34.) To the extent prior cases require a party seeking discovery of private information to always establish a compelling interest or compelling need, without regard to the other considerations articulated in *Hill v. National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th 1, they are disapproved.[8]

---

[8]     On this basis, we disapprove *Digital Music News LLC v. Superior Court* (2014) 226 Cal.App.4th 216; *Life Technologies Corp. v. Superior Court* (2011) 197 Cal.App.4th 640; *Ombudsman Services of Northern California v. Superior Court* (2007) 154 Cal.App.4th 1233; *San Diego Trolley, Inc. v. Superior Court* (2001) 87 Cal.App.4th 1083; *Hooser v. Superior Court* (2000) 84 Cal.App.4th

*(footnote continued on next page)*

29

In addition to placing an unduly onerous burden on Williams by requiring proof of a compelling need, the Court of Appeal erred in the considerations it found relevant to the weighing analysis.  On the side of the scales against disclosure, the court placed fellow employees' potential "fear of retaliation from an employer."  In other words, the prospect an employer might illegally retaliate against an employee for participating in an action to assert legal rights (see Lab. Code, § 98.6 [prohibiting such retaliation]) was treated as a reason to restrict discovery that might enhance the effectiveness of any collective action.  To the extent the prospect of retaliation is real, it cuts the other way, in favor of facilitating collective actions so that individual employees need not run the risk of

_____

*(footnote continued from previous page)*

997; *Save Open Space Santa Monica Mountains v. Superior Court* (2000) 84 Cal.App.4th 235; *Planned Parenthood Golden Gate v. Superior Court*, *supra*, 83 Cal.App.4th 347; *Johnson v. Superior Court*, *supra*, 80 Cal.App.4th 1050; *Hinshaw, Winkler, Draa, Marsh & Still v. Superior Court* (1996) 51 Cal.App.4th 233; *Garstang v. Superior Court* (1995) 39 Cal.App.4th 526; *Lantz v. Superior Court*, *supra*, 28 Cal.App.4th 1839; *Palay v. Superior Court* (1993) 18 Cal.App.4th 919; *Harding Lawson Associates v. Superior Court* (1992) 10 Cal.App.4th 7; *Harris v. Superior Court* (1992) 3 Cal.App.4th 661; *Mendez v. Superior Court* (1988) 206 Cal.App.3d 557; *Binder v. Superior Court* (1987) 196 Cal.App.3d 893; *El Dorado Savings & Loan Assn. v. Superior Court* (1987) 190 Cal.App.3d 342; *Kahn v. Superior Court* (1987) 188 Cal.App.3d 752; *Wood v. Superior Court* (1985) 166 Cal.App.3d 1138; *Moskowitz v. Superior Court* (1982) 137 Cal.App.3d 313; *Jones v. Superior Court* (1981) 119 Cal.App.3d 534; *Board of Trustees v. Superior Court*, *supra*, 119 Cal.App.3d 516; and *Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669.  In some of these cases, it may have been correct to require a compelling interest or compelling need, and in many of these cases, the ultimate conclusion as to whether information should or should not have been discoverable may have also been correct.  We disapprove these cases only to the extent they assume, without conducting the inquiry *Hill* requires, that a compelling interest or compelling need automatically is required.

individual suits.  (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 459–461, recognized as abrogated on other grounds in *Iskanian v. CLS Transportation Los Angeles, LLC*, *supra*, 59 Cal.4th at p. 360; *Crab Addison, Inc. v. Superior Court*, *supra*, 169 Cal.App.4th at p. 971.)

On the other side of the scales, the Court of Appeal minimized the justification for discovery, concluding Williams must "first . . . establish he was himself subjected to violations of the Labor Code."  As discussed above, to show the merits of one's case has never been a threshold requirement for discovery in individual or class action cases; it is not a threshold requirement here.  True, PAGA imposes a standing requirement; to bring an action, one must have suffered harm.  (Lab. Code, § 2699; Sen. Com. on Judiciary, analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) as amended Apr. 22, 2003, p. 6.)  But the way to raise lack of standing is to plead it as an affirmative defense, and thereafter to bring a motion for summary adjudication or summary judgment, not to resist discovery until a plaintiff proves he or she has standing.  (Cf. *Union Mut. Life Ins. Co. v. Superior Court*, *supra*, 80 Cal.App.3d at p. 12 [a discovery motion is not the right vehicle to litigate the appropriate scope of an action].)

Additionally, the Court of Appeal indicated discovery could or should be contingent on Williams establishing a uniform companywide policy.  A uniform policy may be a convenient or desirable way to show commonality of interest in a case where class certification is sought, but it is not a condition for discovery, or even success, in a PAGA action, where recovery on behalf of the state and aggrieved employees may be had for each violation, whether pursuant to a uniform policy or not.  (See Lab. Code, § 2699, subd. (g)(1).)  This is not to say uniform policies play no role in PAGA cases; proof of a uniform policy is one way a plaintiff might seek to render trial of the action manageable.  But nothing in PAGA or our privacy precedents suggests courts can or should condition

31

disclosure of contact information, which might lead to proof of a uniform or companywide policy, on prior proof of a uniform or companywide policy.[9]

"The trial courts in exercising their discretion should keep in mind that the Legislature has suggested that, where possible, the courts should impose partial limitations rather than outright denial of discovery . . . ." (*Greyhound Corp. v. Superior Court*, *supra*, 56 Cal.2d at p. 383.) The privacy interests of fellow employees elsewhere in California could have been addressed by conditioning discovery on a *Belaire-West* notice, as was done for discovery of contact information of employees at Williams's own store.[10] Accordingly, Marshalls's privacy objection does not support the denial of statewide discovery.[11]

---

[9]     At oral argument, Marshalls relied heavily on Williams's alleged failure to present any evidence of a uniform companywide policy. Though Williams was not required to establish such a policy as a condition of discovery, our review of the record reveals that Williams in fact did submit as part of his motion to compel excerpts from a Marshalls employee handbook purporting to describe the company's uniform, allegedly unlawful statewide meal and rest break policies.

[10]     Though it was not made part of the order here, trial courts may also supplement *Belaire-West* notices with a protective order prohibiting disclosure of any received contact information outside the confines of a specific lawsuit. (See *Hill v. National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th at p. 38 [if the "intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged"].)

[11]     Marshalls also contends PAGA is unconstitutional on separation of powers grounds. Marshalls did not raise the constitutionality of the statute on which Williams sues in the Court of Appeal or in its answer to the petition for review. Accordingly, the issue is waived, and we do not address it. (Cal. Rules of Court, rules 8.500(c)(1), 8.516(b)(1).)

## CONCLUSION

We reverse the judgment of the Court of Appeal and remand for further proceedings not inconsistent with this opinion.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Williams v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 236 Cal.App.4th 1151
**Rehearing Granted**

_____

**Opinion No.** 227228
**Date Filed:** July 13, 2017

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** William F. Highberger

_____

**Counsel:**

Capstone Law, Glenn A. Danas, Ryan Wu, Robert Drexler, Stan Karas and Liana Carter for Petitioner.

Cohelan Khoury & Singer and Michael D. Singer for California Employment Lawyers Association as Amicus Curiae on behalf of Petitioner.

Cynthia Rice for California Rural Legal Assistance, Inc., California Rural Legal Assistance Foundation, Legal Aid Society-Employment Law Center and National Employment Law Project as Amici Curiae on behalf of Petitioner.

The Turley Law Firm, William Turley, David T. Mara and Jamie Serb for Consumer Attorneys of California as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Littler Mendelson, Robert G. Hulteng, Amy Todd-Gher, Kyle W. Nageotte, Joshua J. Cliffe, Emily E. O'Connor and Scott D. Helsinger for Real Party in Interest.

Shook, Hardy & Bacon, Phil Goldberg, Christopher E. Appel and Patrick Gregory for National Association of Manufacturers, American Coatings Association and NFIB Small Business Legal Center as Amici Curiae on behalf of Real Party in Interest.

Call & Jensen, Julie R. Trotter, Jamin S. Soderstrom and Delavan J. Dickson for Retail Litigation Center, Inc., California Retailers Association and California Grocers Association as Amici Curiae on behalf of Real Party in Interest.

Jackson Lewis, Lisa Barnett Sween, Natalja M. Fulton, Dylan B. Carp and Douglas G.A. Johnston for Prometheus Real Estate Group, Inc., as Amicus Curiae on behalf of Real Party in Interest.

**Counsel:**

Pahl & McCay, Stephen D. Pahl, Karen Kubala McCay and Julie Bonnel-Rogers for California Apartment Association as Amicus Curiae on behalf of Real Party in Interest.

O'Melveny & Myers, Apalla U. Chopra, Adam J. Karr, Ryan W. Rutledge, Andrew Lichtenstein and Christina N. Pacudan for The Employers Group as Amicus Curiae on behalf of Real Party in Interest.

Haynes and Boone, Mary-Christine Sungaila and Martin M. Ellison for International Association of Defense Counsel as Amici Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Glenn A. Danas
Capstone Law
1875 Century Park East, Suite 1000
Los Angeles, CA  90067
(310) 556-4811

Robert G. Hulteng
Littler Mendelson
650 California Street, 20th Floor
San Francisco, CA  94108-2693
(415) 433-1940