Filed 7/21/22

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CHRISTINA HOWITSON, | D078894 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2020-00026768-CU-OE-CTL) |
| EVANS HOTELS, LLC et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge. Reversed.

Schneider Wallace Cottrell Konecky, Carolyn H. Cottrell and David C. Leimbach for Plaintiff and Appellant.

Barnes & Thornburg, Kevin D. Rising and Garrett S. Llewellyn for Defendants and Respondents.


The Legislature enacted the Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq., (PAGA))[1] for the "sole purpose" of increasing the limited capability of the state to remedy violations of the Labor Code. (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 86 (*Kim*).) PAGA

---

[1] Unless otherwise indicated, all further statutory references are to the Labor Code.

authorizes an "aggrieved employee" to file a lawsuit on behalf of the state seeking civil penalties for violations of the Labor Code, allocating 75 percent of the penalties recovered to the California Labor and Workforce Development Agency (LWDA), with the remaining 25 percent to all employees affected by the violation. (§ 2699, subd. (i).) Before filing suit, PAGA requires the plaintiff to submit a notice of the alleged violations to LWDA and the employer. (§ 2699.3, subd. (a).) LWDA then has 60 days to respond to the notice and if no response is forthcoming after 65 days, the plaintiff may commence a PAGA civil action. (*Id.*, subd. (a)(2)(A).)

This case (1) involves the legal issue of whether an employee who settles individual claims against the employer for alleged Labor Code violations is subsequently barred by claim preclusion from bringing a PAGA enforcement action against the employer for the same Labor Code violations when, prior to settlement, the employee could have added the PAGA claims to the existing action; and (2) requires the application of claim preclusion principles.[2]

As we explain, because the two actions involve different claims for different harms and because the state, against whom the defense is raised, was neither a party in the prior action nor in privity with the employee, we conclude the requirements for claim preclusion are not met in this case.

---

[2]     Shortly before oral argument, the United States Supreme Court decided *Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906 (*Viking River*). In *Viking River*, the U.S. Supreme Court considered whether the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (FAA), preempted the rule of California law invalidating contractual waivers of the right to assert representative claims under PAGA. We requested supplemental briefing from the parties addressing the extent to which, if at all, *Viking River* affects the instant case. The parties agree that *Viking River* is irrelevant because it involved FAA preemption issues, whereas the instant case involves claim preclusion.

## OVERVIEW

### Background and First Lawsuit

Plaintiff Christina Howitson worked for defendants Evans Hotels, LLC and The Lodge at Torrey Pines Partnership, L.P. (collectively, Evans Hotels) as a room service server at The Lodge at Torrey Pines for about one month, between April and May 2019.  On March 26, 2020, Howitson served LWDA with notice of her intention to file a PAGA action against Evans Hotels for violations of the Labor Code.  Evans Hotels responded to LWDA on April 27, 2020.  The required 65-day statutory waiting period ended on June 1, 2020 without any response by LWDA.

On May 26, 2020, Howitson filed an individual and putative class action lawsuit against Evans Hotels (sometimes, First Lawsuit).  The First Lawsuit did not include any PAGA claims, instead asserting 10 causes of action based on myriad alleged violations of the Labor Code and unfair competition laws (Bus. & Prof. Code, § 17200 et seq.).

On June 15, 2020 Evans Hotels served Howitson with an arbitration demand and an offer to compromise for $1,500 plus attorney fees pursuant to Code of Civil Procedure section 998 (998 Offer).  On July 20, 2020, Howitson accepted the 998 Offer.  The 998 Offer in part provided, "Judgment is to be entered in favor of Plaintiff . . . in her *individual* capacity, in the amount of [$1,500] plus statutory costs including attorneys' fees incurred to the date of this offer in the amount to be determined by the Court, according to proof.  Such judgment shall extinguish her *individual* claims in the [First Lawsuit], including all damages, attorneys' fees, costs, expenses, and interest thereon incurred to date."  (Italics added.)  On September 20, 2020, the trial court entered judgment for Howitson "in her *individual* capacity."  (Italics added.)

3

## Second Lawsuit; Demurrer of Evans Hotels

About 10 days after accepting the 998 Offer, Howitson filed the instant PAGA action against Evans Hotels "based on the same factual predicates as the [First Lawsuit]" (sometimes, Second Lawsuit). In October 2020, Evans Hotels demurred, alleging claim preclusion (i.e., res judicata) barred this Lawsuit as a result of the judgment in the First Lawsuit. Evans Hotels argued that Howitson "strategically opted" not to pursue the PAGA claims in her First Lawsuit; that the two lawsuits involved the same, or nearly the same, alleged violations of the Labor Code; and therefore, Howitson violated "California's well-settled prohibition against claim splitting."

Howitson opposed the demurrer. She argued claim preclusion did not apply because neither the harms nor the parties were the same in the two lawsuits.

## Trial Court's Ruling

In its minute order of January 29, 2021 sustaining the demurrer without leave to amend, the trial court found that the parties in the First and Second Lawsuits were "the same";[3] that both involved the "same Labor Code violations"; and that, because Howitson could have brought the PAGA claims in the First Lawsuit, which ended in a "final judgment on the merits," the state-based PAGA claims were barred by claim preclusion.

## DISCUSSION

### A. Standard of Review

On appeal from a judgment dismissing an action after sustaining a demurrer, we review de novo whether the complaint states facts sufficient to

---

[3]  Because the trial court found the parties were the same in both lawsuits, it never addressed whether the state was in privity with Howitson in the First Lawsuit.

4

constitute a cause of action under any legal theory. (*McCall v. PacifiCare of California, Inc.* (2001) 25 Cal.4th 412, 415; *Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1218 (*Irritated Residents*).) "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) In reviewing the sufficiency of the complaint, we may also consider matters that are subject to judicial notice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)[4]

Because it is a question of law, we review de novo the trial court's conclusion that claim preclusion was applicable in this case. (*Irritated Residents*, *supra*, 11 Cal.App.5th at p. 1218; see *Louie v. BFS Retail & Commercial Operations, LLC* (2009) 178 Cal.App.4th 1544, 1553 (*Louie*) ["dismissal on res judicata grounds presents a question of law, which we review de novo"].)

## B. PAGA

"Before enactment of the PAGA in 2004, several statutes provided civil penalties for violations of the Labor Code. The Labor Commissioner could bring an action to obtain such penalties, with the money going into the general fund or into a fund created by the [LWDA] for educating employers. (See § 210 [civil penalties for violating various statutes related to the timing and manner in which wages are to be paid]; § 225.5 [civil penalties for

---

[4] In sustaining the demurrer, the trial court granted Evans Hotels' request for judicial notice of the following documents: (1) Howitson's complaint in the First Lawsuit; (2) Evans Hotels' arbitration demand and Howitson's acceptance of the 998 Offer; and (3) the judgment in the First Lawsuit. (See Evid. Code, § 452, subds. (d) and (h).)

5

violating various statutes related to withholding wages due]; Stats. 1983, ch. 1096.)  Some Labor Code violations were criminal misdemeanors. [Citations.]" (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 378, disapproved on another ground as stated in *Viking River, supra*, 142 S.Ct. 1906.)

In enacting PAGA, the "Legislature declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts.  (Stats. 2003, ch. 906, § 1.)" (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980, 986 (*Arias*) [holding an aggrieved employee seeking civil penalties under PAGA against the employer need not meet class certification requirements because a PAGA action "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties"].)

"California's Labor Code contains a number of provisions designed to protect the health, safety, and compensation of workers.  Employers who violate these statutes may be sued by employees for damages or *statutory* penalties.  [Citations.]  Statutory penalties, including double or treble damages, provide recovery to the plaintiff beyond actual losses incurred.  [Citation.]  Several Labor Code statutes provide for additional *civil* penalties, generally paid to the state unless otherwise provided.  [Citation.]  Before PAGA's enactment, only the state could sue for civil penalties." (*Kim, supra*, 9 Cal.5th at p. 80.)

6

PAGA deputizes "aggrieved employees" to bring a representative lawsuit on behalf of the state to enforce labor laws. (*Kim, supra*, 9 Cal.5th at p. 81; *Iskanian, supra,* 59 Cal.4th at p. 386.) An "aggrieved employee" is defined under PAGA as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (§ 2699, subd. (c); see also *Kim,* at p. 82 [quoting § 2699, subd. (c) in recognizing the rule that "employee unions lack standing to bring PAGA claims because the associations are not 'employed by' the defendants"].) Although an aggrieved employee is the named plaintiff in a PAGA action and has standing to sue, the aggrieved employee sues only as the "proxy or agent of the state's labor law enforcement agencies." (*Arias, supra*, 46 Cal.4th at p. 986.)

"In a lawsuit brought under [PAGA], the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies— namely, recovery of civil penalties that otherwise would have been assessed and collected by the [LWDA]." (*Arias, supra*, 46 Cal.4th at p. 986.) Thus, the civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations. (*Iskanian, supra*, 59 Cal.4th at p. 381.) An action under PAGA " 'is fundamentally a law enforcement action' " (*Arias*, at p. 986), and relief is " 'designed to protect the public and not to benefit private parties' " (*ibid.*). "A PAGA representative action is therefore a type of *qui tam* action." (*Iskanian*, at p. 382; see *id* at p. 386 [a PAGA action is "a dispute between an employer and the [LWDA]"].) "The government entity on whose behalf the plaintiff files suit is always the real party in interest." (*Id.* at p. 382; see *Kim, supra*, 9 Cal.5th at p. 81 [same]; *Arias*, at p. 986 [same].)

7

As a condition to filing a PAGA action, the aggrieved employee "must provide notice to the employer and the [LWDA] 'of the specific provisions of [the Labor Code] alleged to have been violated, including the facts and theories to support the alleged violation.' " (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 545 (*Williams*).) LWDA has 60 days from the receipt of the aggrieved employee's notice to exercise its right to commence its own investigation. (§ 2699.3, subd. (a)(2)(A).)

A PAGA plaintiff may commence an action if LWDA gives notice that it will not investigate the alleged violations or "if no notice is provided by the LWDA within 65 calendar days of the postmark date" of the aggrieved employee's notice. (§ 2699.3, subd. (a)(2)(A); see *Williams, supra*, 3 Cal.5th at pp. 545-546 [the purpose of this notice requirement is to afford LWDA the "opportunity to decide whether to allocate scarce resources to an investigation, a decision better made with knowledge of the allegations an aggrieved employee is making and any basis for those allegations"]; see also *Brown v. Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824, 837 [the PAGA notice must "allow the LWDA 'to intelligently assess the seriousness of the alleged violations' or give the employer enough information 'to determine what policies or practices are being complained of so as to know whether to fold or fight' "].) Once the procedural prerequisites are met, the aggrieved employee can bring a PAGA action. (§§ 2699, subd. (a), 2699.3.)

### C. Claim Preclusion (Res Judicata)[5]

Claim preclusion applies to " ' "matters which were raised or could have been raised, on matters litigated or litigatable" ' in the prior action. [Citation.] ' " 'The doctrine . . . rests upon the ground that the party to be affected, or some other with whom [the party] is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.' " ' [Citation.] ' " 'If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.' " ' " (*Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 844.)

"With respect to claim preclusion . . . , three requirements must be met. First, the second lawsuit must involve the same ' "cause of action" ' as the first lawsuit. [Citation.] Second, there must have been a final judgment on the merits in the prior litigation. Third, the parties in the second lawsuit must be the same (or in privity with) the parties to the first lawsuit." (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228 (*City of Oakland*).) Even if these three requirements are established, claim preclusion will not be applied "if injustice would result or if

---

[5] We recognize that the preferred nomenclature for discussing the law of preclusion—traditionally referred to as "res judicata"—has changed. (See *Samara v. Matar* (2018) 5 Cal.5th 322, 326; *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).) We therefore use the term "claim preclusion" to refer to the doctrine addressing claims that were, or should have been, advanced in a previous suit involving the same parties or those in privity with those parties.

the public interest requires that relitigation not be foreclosed." (*Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 902 (*Consumers Lobby*).)

**D.  Analysis**

**1.  The "Causes of Action" Are Not the Same**

Claim preclusion is based in part on the primary rights theory, which defines the scope of a cause of action and bars a party (or the party's privy) from bringing a second lawsuit if that suit "seek[s] to vindicate the same primary right." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904 (*Mycogen*).)  Under the primary rights theory, a cause of action is defined as: "(1) a primary right possessed by the plaintiff, (2) a corresponding duty imposed upon the defendant, and (3) a wrong done by the defendant which is a breach of such primary right and duty." (*Balasubramanian v. San Diego Community College District* (2000) 80 Cal.App.4th 977, 991 (*Balasubramanian*).)  The cause of action is based on the harm suffered, not on the legal theory asserted or relief sought.  (*Ibid.*)

Here, we conclude the "harm suffered" by Howitson in the First Lawsuit is not the same harm as that suffered by the state in the Second Lawsuit.  " 'Damages are intended to be compensatory, to make one whole. [Citation.]  Accordingly, there must be an injury to compensate.  On the other hand, "Civil penalties, like punitive damages, are intended to punish the wrongdoer and to deter future misconduct." [Citation.]  An act may be wrongful and subject to civil penalties [under PAGA] even if it does not result in injury.' " (*Kim, supra,* 9 Cal.5th at p. 86.)

In the First Lawsuit, the harm suffered was to Howitson individually and to a putative class of former or current employees of Evans Hotel, for purported Labor Code violations to the *employees* themselves in which

10

compensatory damages were sought. (See *Kim, supra,* 9 Cal.5th at pp. 85-86.) However, in the Second Lawsuit, the harm suffered for such violations is to the state and the general public, in which civil penalties are assessed even if there is no injury to the employees themselves. (See *Kim,* at p. 81 ["A PAGA claim is legally and conceptually different from an employee's own suit for damages and statutory penalties."]; *Iskanian, supra,* 59 Cal.4th at p. 381 ["The civil penalties recovered on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities."]; *Arias, supra,* 46 Cal.4th at p. 986 ["In a lawsuit brought under [PAGA], the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the [LWDA]."].)

That both the First and Second Lawsuits involved the same or almost the same alleged Labor Code violations does not change our conclusion that the "primary rights" in the two Lawsuits are not the same. As noted, under the primary rights theory that right must be "possessed by the *plaintiff.*" (*Balasubramanian, supra,* 80 Cal.App.4th at p. 991, italics added.) In the First Lawsuit, it was Howitson who possessed the "primary right"— for *her* to be free from Labor Code violations as a former employee of Evans Hotels.

In the Second Lawsuit, however, the plaintiff possessing the primary right is the *state,* as if LWDA itself had brought the PAGA action. (See *Kim, supra,* 9 Cal.5th at p. 81 ["Every PAGA claim is 'a dispute between an employer and the state.' "]; *Iskanian, supra,* 59 Cal.4th at p. 380 [PAGA plaintiffs act as proxies for the state's labor law enforcement agencies, and they represent "*the same legal right and interest*" as those agencies: the "recovery of civil penalties that otherwise would have been assessed and

11

collected by the [LWDA]" (italics added)].)  Because the primary rights of the plaintiffs in the First and Second Lawsuits are not the same, we independently conclude claim preclusion does not apply to bar the Second Lawsuit.  (See *City of Oakland*, *supra*, 224 Cal.App.4th at p. 228.)

### 2.  The Parties Are Not the Same

We separately conclude that claim preclusion does not apply because the parties in the two lawsuits are not the same.  (See *City of Oakland*, *supra*, 224 Cal.App.4th at p. 228.)  In the First Lawsuit, Howitson was the real party in interest, as she as an individual and class representative sought damages against Evans Hotels for purported Labor Code violations to the employees.  (See Code Civ. Proc., § 367 ["Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."].)

However, in the Second Lawsuit, the state is the real party in interest. (See *Iskanian*, *supra*, 59 Cal.4th at p. 382 [a PAGA action is a dispute between an employer and the state in which the state "is always the real party in interest"]; see also *Kim*, *supra*, 9 Cal.5th at p. 81; *Arias*, *supra*, 46 Cal.4th at p. 986.)  Although the Legislature gave Howitson, an "aggrieved employee," *standing* to act as a representative in the Second Lawsuit, she is not the real party in interest in that suit.  (See Code Civ. Proc., § 367 [a real party in interest must prosecute an action in the party's name "*except as otherwise provided by statute*"]; see also *Kim*, at p. 84 [plaintiff becomes "an aggrieved employee, and had PAGA *standing*, when one or more Labor Code violations [are] committed" by the employer (italics added)]; *Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000 [" 'Standing requirements will vary from statute to statute based upon the intent of the Legislature and the purpose for which the particular statute was

enacted.' "]; *Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d 1377, 1385-1387, 1389-1390, 1393 [in a suit under a previous version of the unfair competition statute, injury was not required because the Legislature expressly gave standing to "the general public" to sue for relief].) Because Howitson steps into the enforcement "shoes" of the state and her interests in the PAGA litigation are derivative of those of LWDA, we separately conclude the parties were not the same in the two lawsuits.

But this does not end our analysis. As noted, the same-party requirement for claim preclusion may also be satisfied if the party against whom the defense is raised (i.e., the state) was in privity with a party to the prior adjudication (i.e., Howitson). (See *Bernard v. Bank of America Nat. Trust & Savings Assoc.* (1942) 19 Cal.2d 807, 813; *City of Oakland*, *supra*, 224 Cal.App.4th at p. 228.)

### 3. Forfeiture

We first address Howitson's contention that Evans Hotels' failure to raise privity in the trial court "waive[s]" or forfeits[6] the issue on appeal. It is well-settled that the failure to raise an issue in the trial court typically forfeits on appeal any claim of error based on that issue. (See, e.g., *In re Javier G.* (2006) 137 Cal.App.4th 453, 464 ["Generally, issues not raised in the trial court cannot be raised on appeal."].) Howitson points out that Evans Hotels did not rely on privity because they argued in their demurrer that the parties were the same in the two lawsuits, which argument the trial court

---

6     "[T]he correct legal term for the loss of a right based on failure to timely assert it is 'forfeiture,' because a person who fails to preserve a claim forfeits that claim. In contrast, a waiver is the ' "intentional relinquishment or abandonment of a known right." ' " (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.)

accepted when it rejected Howitson's argument that the state was the "actual plaintiff" in the Second Lawsuit.

However, there are exceptions to the forfeiture rule. A court of review has discretion to consider an issue not raised in the trial court to the extent it presents a pure question of law or involves undisputed facts. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7; see also *Haley v. Antunovich* (2022) 76 Cal.App.5th 923, 930 [concluding the defendant forfeited the contention that the court improperly construed a statue by failing to raise that issue in the trial court, but exercising its discretion to decide the issue on appeal as it presented a question of law].)

Here, the facts are not in dispute and whether claim preclusion applies is a question of law. (See *Irritated Residents*, *supra*, 11 Cal.App.5th at p. 1218; see *Louie*, *supra*, 178 Cal.App.4th at p. 1553.) We therefore exercise our discretion and address the merits of Evans Hotels' contention that the state was in privity with Howitson and therefore is also bound by the judgment in the First Lawsuit.

### 4. No Privity Existed Between the State and Howitson

Evans Hotels argues that by "*operation of law*," Howitson became an "agent of the State" when the 65-day period for LWDA to respond to her PAGA notice expired; and therefore, that she was "in privity with the State for the specific purpose of bringing PAGA claims [in the First Lawsuit] based on the alleged wage and hour violations." (Italics added.) We find this argument unavailing.

"Privity is a concept not readily susceptible of uniform definition." (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 (*Clemmer*).) " ' "Whether someone is in privity with the actual parties requires close examination of the circumstances of each case." ' " (*Citizens for Open Access*

14

*to Sand and Tide, Inc. v. Seadrift Association* (1998) 60 Cal.App.4th 1053, 1070 (*Citizens*).)

Courts apply privity where the "nonparty has an identity of interest with, and adequate representation by, the party in the first action and the nonparty should reasonably expect to be bound by the prior adjudication." (*Helfand v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 869, 902). "A party is adequately represented for purposes of the privity rule 'if his or her interests are so similar to a party's interest that the latter was the former's virtual representative in the earlier action.' " (*Citizens*, *supra*, 60 Cal.App.4th at p. 1070.) The adequacy of representation is measured " 'by inference, examining whether the . . . the party in the suit which is asserted to have preclusive effect had the same interest as the party to be precluded, and whether that . . . party had a strong motive to assert that interest.' " (*Id.* at p. 1071.) "If the interests of the parties in question are likely to have been divergent, one does not infer adequate representation and there is no privity." (*Ibid.*)

Privity "is a requirement of due process of law." (*Clemmer*, *supra*, 22 Cal.3d at p. 874.) "In the final analysis, the determination of privity depends upon the fairness of binding [the nonparty] with the result obtained in earlier proceedings in which it did not participate." (*Citizens*, *supra*, 60 Cal.App.4th at 1070.) " ' "[T]he determination whether a party is in privity with another . . . is a policy decision." ' " (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 91.)

Here, the state had no interest in the subject matter of the First Lawsuit. (See *Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 674 [" ' "Privity" as used in the context of res judicata or collateral estoppel, does not embrace relationships between persons or

15

entities, but rather it deals with a person's relationship *to the subject matter of the litigation.*' "].)  As we have noted, the First Lawsuit involved Howitson's individual and putative class action claims only.  When Howitson accepted the 998 Offer and settled the First Lawsuit for $1,500, it was for her *individual* benefit.

In doing so, Howitson was not acting as a private attorney general under PAGA, "benefit[ing] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance."  (See *O'Connor v. Uber Technologies, Inc.* (N.D.Cal. 2016) 201 F.Supp.3d. 1110, 1132-1133.)  The state, as a nonparty in the First Lawsuit, did not have an interest so similar to Howitson's that she was acting as the state's " ' " ' "virtual representative" ' " in the first action.' " (See *Castillo v. Glenair, Inc.* (2018) 23 Cal.App.5th 262, 277, quoting *DKN Holdings*, *supra*, 61 Cal.4th 813, 826.)

Evans Hotels relies extensively on *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562 (*Villacres*) in arguing claim preclusion bars the Second Lawsuit.  In *Villacres*, the plaintiff had been a member of a class action in a prior lawsuit alleging Labor Code violations against the employer. (*Id.* at p. 573.)  After a settlement in the prior lawsuit in which the employer agreed to pay $2.5 million to class members in return for a release of "any and all claims" that could have been asserted against the employer, the plaintiff initiated a second, PAGA lawsuit.  (*Id.* at pp. 572-573.)  The trial court granted the employer's motion for summary judgment in the PAGA action based on claim preclusion, which the Court of Appeal affirmed.  (*Id.* at p. 574.)

In affirming, the *Villacres* court reasoned that the plaintiff neither objected to the settlement of the prior action in which the employer allocated

16

up to $730,000 for civil penalties, nor sought to intervene to preserve the PAGA claims seeking what it claimed were additional civil penalties, nor opted out of the class to pursue them in a separate suit. It therefore held the PAGA claims were barred by claim preclusion. (*Villacres*, *supra*, 189 Cal.App.4th at pp. 581-582.)

We question whether *Villacres* remains good law in light of the Supreme Court's repeated recognition that the real party in interest in a PAGA suit is the state, not the aggrieved employee. (See *Kim*, *supra*, 9 Cal.5th at p. 81; *Iskanian*, *supra*, 59 Cal.4th at p. 382; *Arias*, *supra*, 46 Cal.4th at p. 986.) As we have noted, although the Legislature gave Howitson *standing* to assert a PAGA action (see Code Civ. Proc., § 367), she is not the real party in interest in that action. We thus decline to follow the holding in *Villacres* that claim preclusion bars an aggrieved employee's PAGA suit seeking civil penalties merely because the plaintiff was a member of the settlement class, or, as in the instant case, the only party to settlement, in a prior suit against the employer.

In any event, we also conclude *Villacres* is factually inapposite. Here, Howitson's settlement and release in the 998 Offer (and the judgment entered thereon) involved her *individual* claims only. Conversely, in *Villacres* the settlement was class-wide, and unlike in the instant case, released "any and all claims . . . damages, action or causes of action . . . which . . . could have been asserted against the [Employer] arising out of or related to all claims for wages, penalties, interests, costs and attorneys' fees arising from the alleged violation of any provision of . . . California law and/or Federal law which [were] or could have been raised as part of the Plaintiffs' claims." (Italics omitted.) (*Villacres*, *supra*,

17

189 Cal.App.4th at p. 586.) We therefore find *Villacres* inapposite in the instant case.

### 5. Additional Reasons Not to Apply Claim Preclusion

Even *if* the requirements for claim preclusion were established, exercising our independent review we would still decline to apply the doctrine to bar the Second Lawsuit. (See *Consumers Lobby*, *supra*, 25 Cal.3d at p. 902.)

First, applying claim preclusion under the circumstances of this case would undermine the Legislature's intent, repeatedly expressed by the Supreme Court over about the last decade, of protecting the public from Labor Code violations that, absent PAGA, would remain unredressed. (See, e.g., *Kim*, *supra*, 9 Cal.5th at p. 86 [the purpose of PAGA is to increase the LWDA's limited enforcement capability by authorizing aggrieved employees to enforce Labor Code provisions on the agency's behalf]; *Williams*, *supra*, 3 Cal.5th at p. 548 ["Hurdles that impede the effective prosecution of representative PAGA actions undermine the Legislature's objectives."]; *Iskanian*, *supra*, 59 Cal.4th at p. 383 [the Legislature enacted PAGA "to augment the limited enforcement capability of the [LWDA]"].)

Second, as summarized *ante*, less than two months passed between the date Howitson filed the First Lawsuit and her acceptance of the 998 Offer to settle her individual claims in that suit. It appears no discovery took place between the parties during this short time-period, and no issues were "actually litigated"[7] between them such that the policy of promoting judicial

---

[7] Unlike claim preclusion, for issue preclusion (or collateral estoppel) to apply, the parties must have "actually litigated" the identical issue in the former proceeding. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)

18

economy by precluding piecemeal litigation would be compromised absent the relitigation bar. (See *Mycogen*, *supra*, 28 Cal.4th at p. 897.)

Third, when Howitson initially filed the First Lawsuit on May 26, 2020, the 65-day required waiting period for LWDA to investigate or respond had not yet expired. While at some point she *could* have added the state's PAGA claims to the First Lawsuit after she filed that action, she was not required by statute to do so. To the contrary. (§ 2699.3, subd. (a)(2)(C) [providing an aggrieved employee "*may* as a matter of right amend an existing complaint to add a cause of action arising under this part at any time within 60 days of the time periods specified in this part" (italics added)].) "May" is not the same as "must." (*Mijares v. Orange County Employees' Retirement System* (2019) 32 Cal.App.5th 316, 329 [" 'Courts routinely construe the word "may" as permissive and words like "shall" or "must" as mandatory.' "]; *Jones v. Catholic Healthcare West* (2007) 147 Cal.App.4th 300, 307 [same].)

Fourth, PAGA expressly provides that an employee may bring suit separately from a PAGA action. (§ 2699, subd. (g)(1) [providing, "Nothing in this part shall operate to limit an employee's right to pursue or recover other remedies available under state or federal law, *either separately or concurrently* with an action taken under this part" (italics added]); cf. *id.*, subd. (h) ["No action may be brought under this section by an aggrieved employee if the agency . . . , on the same facts and theories, cites a person within the timeframes set forth in Section 2699.3 for a violation of the same section or sections of the Labor Code under which the aggrieved employee is attempting to recover a civil penalty . . . ."].) Mandating that Howitson include the PAGA claims in the First Lawsuit or be barred from pursing those claims *separately* runs counter to the plain language of section 2699. (See *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [in interpreting a statute,

19

we "begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent" and that to do so, we " 'look first to the language of the statute, giving effect to its "plain meaning" ' "].)

For these additional reasons, we decline to apply claim preclusion to bar the Second Lawsuit.

Finally, we acknowledge our decision in this case does not resolve any of the issues raised in *Viking River* and make clear that on remand, Evans Hotels may, if it so chooses, bring a motion to compel arbitration of any or all PAGA claims brought by Howitson in this case. We offer no opinion whether *Viking River* will apply on remand. The record before us neither includes the purported arbitration agreement between Howitson and Evans Hotels nor any language or other information from that purported agreement, including whether the parties agreed to be bound by the FAA; whether there was a severability clause that would require some, but perhaps not all, PAGA claims to be arbitrated as was the case in *Viking River*, among many other issues including whether Howitson ever signed such a purported agreement. The parties each recognize in supplemental briefing that these issues are not before this court and, in the event of a reversal, will be taken up on remand.

DISPOSITION

The judgment in favor of Evans Hotels is reversed.  Howitson to recover her costs of appeal.

HALLER, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.